# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 11-00036-KHV |
| CROSBY POWELL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's <u>Motion To Continue Jury Trial</u> (Doc. #124) filed February 3, 2012. Defendant requests a continuance of the trial, currently set for February 13, 2012. Defendant asserts that he is currently unable to stand trial due to health issues, that trial should therefore be continued, and that any delay caused by a continuance is excludable from speedy trial calculations under 18 U.S.C. §§ 3161(h)(4) and (h)(7)(A).[1] For reasons set forth

---

[1] Under Section 3161(h)(4), time is excludable from speedy trial calculations where a defendant is mentally incompetent or physically unable to stand trial. Under 18 U.S.C. § 3161(h)(7)(A), the Court considers whether the ends of justice served by granting a continuance outweigh the best interests of the public and defendant in a speedy trial. <u>United States v. Toombs</u>, 574 F.3d 1262, 1268 (10th Cir. 2009). In doing so, the Court must consider (among others) the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable

(continued...)

below, the Court finds that the motion should be overruled.

The trial court has broad discretion in determining whether to grant a motion for continuance. United States Rivera, 900 F.2d 1462, 1475 (10th Cir. 1990). In ruling on a motion for continuance, the Court is guided by the nature of the action, the diligence of the party requesting the continuance, the conduct of the opposing party, the effect of the continuance and the asserted need for the continuance. United States Bradshaw, 787 F.2d 1385, 1392 (10th Cir. 1986).

> Whether a denial of a motion for a continuance is arbitrary or unreasonable depends upon an examination of a number of factors, including: [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

Rivera, 900 F.2d at 1475 (10th Cir. 1990) (citing United States v. West, 828 F.2d 1468, 1470 (10th Cir. 1987)).

Whether a defendant's physical condition requires a continuance can be difficult for a trial judge to determine. United States v. Brown, 821 F.2d 986, 988 (4th Cir. 1987) (medical forecasts

---

[1](...continued)
to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B); see United States v. Stimatze, No. 10-40027-01-SAC, 2010 WL 864477, at *3-4 (D. Kan. Mar. 10, 2010) (providing examples of specific and detailed reasons and information required for such continuances).

are uncertain, and evidence rarely points in only one direction). The fact that a trial is inherently stressful "cannot abrogate the public interest in bringing those accused of criminal misconduct promptly to account." Id.

The judge must assess the degree to which a defendant's health might impair his participation in his defense, especially his right to be present at trial, to testify on his own behalf and to confront adverse witnesses. Id. Whether the proceeding is likely to worsen the defendant's condition is also relevant. Id. The trial judge may properly consider factors including medical evidence,[2] the defendant's activities in the courtroom and outside of it,[3] the steps the Court can take to reduce the medical risks,[4] and the steps that defendant himself is or is not taking to improve his condition.[5] Id., (citing United States v. Goldstein, 633 F. Supp. 424, 427 (S.D. Fla. 1986)).

To obtain a continuance based on medical danger, defendant generally must provide a written report or affidavit from a physician stating that proceeding with trial would pose a substantial danger to defendant's life. Brown, 821 F.2d at 989 (upholding denial of continuance despite statements by some of defendant's treating physicians that trial would aggravate defendant's hypertension, diabetes, and heart disease to dangerous extent); United States v. Ramirez, No. 09-20215, 2010 WL 848808, at *4-6 (E.D. Mich. March 10, 2010) (denying continuance where

---

[2] Here, defendant presents no medical evidence except medical records.

[3] Here, the parties present no such evidence.

[4] Here, the Court has informed defendant that it will take whatever reasonable steps are necessary to reduce defendant's pain and any other medical risks. So far, defendant has asked only that he be able to alternate positions in the courtroom, and the Court intends to accommodate defendant in this regard.

[5] Here, defendant has seen many, many medical doctors. He is proposing medical therapies which may not help, and may possibly worsen his condition. On this record, it is not clear that any doctor endorses the course of therapies which plaintiff has elected.

defendant's own cardiologist stated that defendant's physical condition was stable and that testifying at trial would not pose substantial risk to his health).

For a denial of a continuance to constitute an abuse of discretion, the medical repercussions must be serious and out of the ordinary; the impending trial must pose a substantial danger to defendant's life or health. United States v. Daly, 716 F.2d 1499, 1511 (9th Cir. 1983); see United States v. Goodwin, 455 F.2d 710, 712 (10th Cir. 1972) (upholding convictions where district court denied continuance and required defendant to leave hospital bed to attend trial; despite affidavit of defendant's physician, record revealed that defendant was ambulatory and able to converse); see also United States v. Schroeder, 902 F.2d 1469, 1471 (10th Cir. 1990) (no error in denying continuance where despite claim of sleep deprivation, no proof that defendant was unable to understand nature of proceedings or assist in defense).

Defendant advances various medical arguments in support of his request for a continuance. Defendant did not testify or call medical experts to testify, so the Court must rely exclusively on the exhibits which defendant attached to his motion to continue and supplements thereto.

1. Defendant has a fractured bone in his spine and requires surgery which has been scheduled for March 2, 2012.

For three reasons, defendant's purported back problems do not justify the requested continuance.

First, trial is scheduled to last eight days, and the Court does not expect that it will continue to March 2. The Court is willing to work with defendant to make sure that he is able to complete all necessary pre-operative procedures before that date. Accordingly, a continuance is not necessary to accommodate any back surgery on March 2.

Second, on this record it is not clear that surgery will even occur on March 2. Apparently

it cannot proceed until defendant is able to reduce his blood pressure. Absent any indication of when this might happen, the currently scheduled date for surgery is necessarily speculative.

Finally, any need for back surgery is far from clear. Defendant is a 72-year-old man with three prior back surgeries.[6] On February 6, 2012 – seven days before trial – he self-reported to Front Range Spine and Neurosurgery clinic that he has "worsening back pain" and gets "sharp pain that is almost electric-like, abruptly stopping him and causing him to cry out in pain." An MRI recently has revealed a "pars fracture." Dr. Michael J. Rauzzino, however, explained to defendant that "having had three lumbar surgeries already, it would be difficult to imagine that any additional surgery would make him much better."[7] Despite Dr. Rauzzino's further advice that "this is not an ideal operation by any stretch" and his "hope" that defendant's pain is alleviated and "not made worse," defendant has elected to proceed with surgery.

Defendant's back condition is stable. In fact, according to Dr. Rauzzino, the "pars fracture" likely occurred during the second back surgery on February 8, 2011. Also, defendant's diagnosis is general degeneration of the lumbar spine; according to Mik K. Stambuk, M.A., M.D., defendant's history could suggest a "failed back syndrome" which is related to post-operative and degenerative etiology. For these reasons, at least as of December 29, 2011, Dr. Stambuk is not convinced that

---

[6] According to his medical records, defendant had revision, decompression and diskectomy surgery of the left L3-S1 in situ posterior spinal fusion on December 14, 2010. On February 8, 2011, he had L2-L3 microdiskectomy, decompression and revision. On February 19, 2011, he had revision decompression at L2-L3, I&D and wound exploration and evacuation of a hematoma.

[7] Dr. Rauzzino's observation is consistent with that of back surgeon Tania T. Orzynski, M.D., on January 12, 2012. She states that following defendant's numerous lumbar procedures over the last several years, "he seems to experience a deterioration and [sic] function and quality of his life, and yet he continues to explore surgical options."

additional surgery is indicated.

In summary, while defendant has identified a doctor who is willing to perform back surgery if he improves his blood pressure by March 2, the record does not identify a single medical doctor who is recommending that surgery. To the contrary, three doctors have expressed doubt about further surgery, given defendant's age and medical history. As a result, the Court is not convinced that the proposed surgery is reasonable, let alone necessary to rectify a substantial danger to defendant's life or health. The Court therefore declines to continue the trial on the basis of the scheduled back surgery.

2. <u>Defendant has prostate cancer and requires surgery and is currently losing blood through his urine.</u>

On August 16, 2011, defendant was diagnosed with prostate cancer. He also has "longstanding voiding difficulties." To address the latter issues, on October 3, 2011, Dr. Snyder suggested that defendant undergo a brachytherapy procedure. Defendant scheduled that procedure but then cancelled it and sought a second opinion from Dr. Logan. On October 14, 2011, Dr. Logan recommended the same procedure. Defendant again scheduled the procedure but canceled it and on November 28, 2011 sought a third opinion from Urology Associates. As of January 20, 2012, Urology Associates noted that defendant had not had treatment yet "and may not need treatment." As to the prostate cancer, defendant's doctor believes that he can pursue "a course of expectant management/observation only, with minimum risk of progression." Defendant's doctor "strongly suspects" that defendant "would be one of those patients who will live his normal lifespan with out the need to treat his prostate cancer." According to the doctor, defendant's "first choice should be one of watchful waiting."

No treatment for prostate cancer or voiding difficulties is imminent. Nothing in the medical

-6-

record now before the Court suggests any reason why defendant's prostate and urinary issues should cause a delay of trial.[8]

> 3. Defendant was recently prescribed high doses of narcotic pain medication and in the last two weeks, his counsel has observed diminished stamina and loss of memory.

On February 1, 2012, defendant obtained a prescription which increased from 10 to 25 micrograms (mcg) of fentanyl (his pain medication) in a transdermal patch. Except for medical records which recite his statements to doctors, defendant has submitted no medical evidence about any need for the increased dosage. Although he describes 25 mcg of fentadyl as a "high dose" of a "narcotic pain medication," the record is devoid of any information about the nature of the drug, its efficacy or side effects. Accordingly, the Court has no basis on which to attribute any loss of stamina or memory to defendant's medication. Furthermore, defendant apparently secured the higher dosage based on his self-report of increased back pain.[9] Because the record contains no objective basis for finding that defendant's back condition has changed since his surgery in February of 2011, the Court is not persuaded that defendant has a legitimate need for a higher dosage of pain medicine.

---

[8] On January 23, 2012, three days after his examination at Urology Associates, defendant apparently found a doctor at Littleton Radiation Oncology who has agreed to perform "prostate seed implant surgery" on April 10, 2012 and has scheduled pre-operative ultrasound and CT scans for February 28, 2012. As noted, at least one doctor believes that seed implant procedure may be contra-indicated because of defendant's urinary issues. The Court need not speculate about defendant's motives in scheduling the procedure, however, because it will occur after the trial has concluded. Also, defendant suggests no reason why the pre-operative procedures cannot be conducted after trial or when trial is not in session.

[9] Defendant secured a prescription for the new fentadyl patch on February 1, 2012, just 12 days before trial. As noted, on February 6, 2012 – seven days before trial – defendant self-reported to Front Range Spine and Neurosurgery clinic that he had "worsening back pain" and "sharp pain that is almost electric-like, abruptly stopping him and causing him to cry out in pain."

> 4. <u>Defendant will be unable to physically and mentally participate in trial and attending the trial will pose a substantial risk to his health.</u>

The government has expressed "concern" about defendant's ability to communicate with counsel and assist in the preparation of his defense, given defendant's pain medication and the other physical ailments which he professes to have. At the hearing on February 9, however, defense counsel stopped well short of claiming that defendant is unable to communicate with counsel. He only claimed that defendant's stamina and memory – as opposed to his ability to communicate – had decreased in the last two weeks.

Defendant has shown no reason for any lack of stamina or diminished memory. He tenders no objective reason or competent medical explanation for such conditions, and such conditions are so capable of feigning that they scarcely deserve further discussion. Moreover, quite plainly, it appears that defendant is playing games with the Court. For example, at the hearing on February 9, defendant was alert and engaged with defense counsel, passing notes and offering comments. At 9:56:28 a.m., defendant passed counsel a note to remind counsel that he has a colonoscopy set for next Tuesday (February 14) because of concerns that he has either colorectal or pancreatic cancer.[10] At 10:10:00 a.m., the Court indicated its preliminary intent to deny defendant's motion to continue the trial and briefly spoke with counsel for two minutes about trial procedures. At 10:12:38 a.m., however, defendant appeared to have suddenly fallen asleep with drainage coming from his nose and mouth. Apparently, defendant would have the Court believe that he abruptly fell into a deep sleep[11]

---

[10] Defendant suggests no reason why the colonoscopy could not occur on February 16 or 17, when the Court is not in session, or thereafter.

[11] Court personnel who remained in the courtroom reported that defendant perked up as soon as the Court left the bench. The Court also notes that on July 21, 2011, immediately after
(continued...)

– presumably from his "high dose" of pain medication. This suggestion is preposterous. In recent months, defendant has spent an extraordinary amount of time and energy shopping his ailments to various doctors. It appears that his efforts are primarily intended to build a case for delay of trial, rather than to secure treatment which is reasonable and necessary.

The Court has carefully considered defendant's reasons for requesting a continuance and it does sympathize with defendant's concerns. It nonetheless finds that defendant has not shown the ends of justice served by granting a continuance outweigh the best interests of the public and defendant in a speedy trial. All counsel are ready for trial. At this time, if trial proceeds, the trial itself will not pose a substantial risk of danger to his life or health.[12] On the other hand, if trial is delayed, the degenerative and progressive nature of defendant's problems may create a situation in which trial becomes impossible. The government and the Court will be greatly inconvenienced by a continuance. Indeed, because the undersigned judge is a visiting judge due to docket congestion in the District of Colorado, a continuance would disrupt the orderly scheduling of trials in two districts. Even though defendant is apparently willing to waive all applicable speedy trial rights, the public also has an important interest in bringing this case to a close. Because of docket conditions in both Colorado and Kansas, the Court cannot predict that a continued trial will occur within a reasonable time. It makes no sense to bring in a third judge, from yet another jurisdiction, to address defendant's concerns. Defendant has presented no credible evidence that his current health concerns

---

[11](...continued)
the Honorable Robert E. Blackburn denied defendant's request to continue the trial then set for July 25, 2011, defendant fell from this chair in the courtroom, sustaining injuries sufficiently serious to require his immediate hospitalization, examination, testing and treatment.

[12] The Court recognizes that defendant appears to have some serious medical conditions, but defendant has not shown that the trial itself likely would aggravate those conditions.

-9-

will impair his ability to participate in his defense; alleged loss of stamina appears to be manageable and defense counsel has had five months to plumb the depths of defendant's memory. The record suggests no reasons why defendant's health concerns would prevent him from attending trial, testifying in his own defense or confronting adverse witnesses. Indeed, defendant does not argue to the contrary. For all these reasons, defendant's motion to continue is overruled.[13]

**IT IS THEREFORE ORDERED** that defendant's Motion To Continue Jury Trial (Doc. #124) filed February 3, 2012 be and hereby is **OVERRULED**.

Dated this 10th day of February, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[13] The record reveals that while defendant has serious medical conditions, they are chronic and not emergent in nature. Therefore none of these conditions should cause defendant to be absent from any part of the scheduled trial. If problems should arise in this regard, the Court may be required to revisit the question whether defendant should be on pretrial conditions of release pending the outcome of the trial. Also, the Court reminds defendant that if he voluntarily absents himself from the trial without good cause and compelling justification, bond may be revoked and the trial may proceed in his absence. See Rule 43(c)(1)(A), Fed. R. Crim. P. (defendant's presence at trial not required if voluntarily absent after trial has begun); United States v. Edmonson, 962 F.3d 1535, 1543-44 (10th Cir. 1992) (absence without compelling justification constitutes waiver of right to be present at trial).